IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RIOVONNI BRYANT; BRANDON MCKINNEY; EMILY PADILLA; and AZARAEL TUTMAN, individually and on behalf of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>UNIFI AVIATION, LLC,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>: CIVIL ACTION FILE NO:<br>: 1:24-CV-04141-AT<br>:<br>:<br>:<br>:<br>:<br>: |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

COME NOW Plaintiffs Riovonni Bryant, Brandon McKinney, Emily Padilla, and Azarael Tutman (together "Plaintiffs"), individually and on behalf of all other similarly situated persons, and file this Response in Opposition to Defendant's Motion to Compel Arbitration (the "Motion"). ECF No. 5. As argued below, under *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022), Plaintiffs fall within a "class of workers engaged in foreign or interstate commerce," and as a result the arbitration agreements that they purportedly signed are exempt from the scope of the Federal Arbitration Act ("FAA"). 9 U.S.C. § 1. Therefore, the Motion should be denied.

## I.  Procedural History

On September 19, 2024, Plaintiffs filed this action on behalf of themselves and all other similarly situated persons alleging that their employer violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "FLSA"), by rounding employee time up and down only in Defendant's favor in violation of 29 C.F.R. § 785.48 and the FLSA. Complaint, ECF No. 1. Defendant was served with the Complaint on September 19, 2024, ECF No. 4, and filed the Motion on October 10, 2024. ECF No. 5. Plaintiffs sought, and received, a two-week extension to file this Response. ECF No. 7.

## II.  Statement of Facts

As alleged in the Complaint, Plaintiffs Bryant, McKinney, and Padilla work for Defendant at Hartsfield-Jackson Atlanta International Airport ("the Airport") as Customer Service Leads. Plaintiff Tutman works for Defendant at the Airport as a Wheelchair Agent. Complaint ¶ 4. As explained in the declaration of Plaintiff Padilla that is filed herewith, Customer Service Leads and Wheelchair Agents frequently load and unload passengers and their cargo (baggage) on and off airplanes traveling interstate and overseas. Padilla Decl. ¶¶ 4-6, 8, 12.

The primary job duty of a Wheelchair Agent is transporting passengers through the Airport to their gate and on and off airplanes operated by Delta Airlines. *Id.* ¶ 5. Customer Service Leads have additional duties, such as setting up

wheelchairs at the gate and pre-boarding wheelchairs onto the jet bridge. However, there are not enough Wheelchair Agents working at the Airport, so Customer Service Leads fill in and perform the duties of Wheelchair Agents virtually every day. *Id.* ¶ 6.

Passengers that are loaded and unloaded on and off Delta airplanes by Wheelchair Agents and Customer Service Leads fly interstate and international routes. *Id.* ¶ 8. Most of the passengers that are loaded on and off airplanes by Wheelchair Agents and Customer Service Leads bring with them at least one piece of carry-on baggage. *Id.* ¶ 7.

When loading passengers and their baggage onto airplanes, a Wheelchair Agent or Customer Service Lead pushes the wheelchair bound passenger and their baggage from the gate, down the jet bridge, to the airplane. If the passenger needs assistance boarding the plane, the Customer Service Lead or Wheelchair Agent walks the passenger to their seat and assists them store their baggage under their seat and/or in the overhead baggage compartment. *Id.* ¶ 9.

With passengers that are immobile (e.g., paralyzed or otherwise disabled), the protocol is to have at least two workers load and unload the passenger on and off the airplane. The normal protocol is for one Customer Service Lead and one Wheelchair Agent to load and unload each immobile passenger, but sometimes a Wheelchair Agent is unavailable, so two Customer Service Leads often load and

unload immobile passengers. *Id.* ¶ 10. With an immobile passenger, Customer Service Leads and Wheelchair Agents must lift the passenger out of the wheelchair at the bottom of the jet bridge and place them into an "aisle chair." Customer Service Leads and Wheelchair Agents then wheel the aisle chair onto the airplane. Once they reach the passenger's assigned seat, they lift the passenger into their seat, store their baggage into the overhead compartment, and wheel the aisle chair off the airplane. Depending on the weight of the passenger, additional workers may be needed to assist, and it may require up to five or six Customer Service Leads and/or Wheelchair Agents to lift an immobile passenger into their seat. *Id.* ¶ 11.

### III. Argument

#### a. Standard of Review

"Courts generally treat motions to compel arbitration as motions to dismiss for lack of subject matter jurisdiction under [Fed. R. Civ. P] 12(b)(1)." *Chamlee v. Jonesboro Nursing & Rehab. Ctr., LLC*, No. 1:18-CV-05899, 2019 WL 6042273, at *5 n.5 (N.D. Ga. Aug. 14, 2019); *see also Dixon v. Synchrony Fin.*, No. 1:15-CV-00406, 2015 WL 12720290, at *3 n.4 (N.D. Ga. Aug. 18, 2015), *report and recommendation adopted*, No. 1:15-CV-406, 2015 WL 12723144 (N.D. Ga. Sept. 10, 2015) (recognizing a 12(b)(1) motion as "one to compel arbitration").

A motion under Rule 12(b)(1) can be based on either a facial or a factual challenge to a complaint. *McElmurray v. Consol. Gov't of Augusta-Richmond*

4

*Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). For a facial attack on a complaint, a district court looks to see if the plaintiff sufficiently alleged subject matter jurisdiction, and similar to a Rule 12(b)(6) motion to dismiss, the allegations in the complaint are taken as true. *McElmurray*, 501 F.3d at 1251. Factual attacks, however, challenge whether subject matter jurisdiction exists in fact, irrespective of the pleadings, and accordingly, matters outside the pleadings, such as declarations, may be considered. *Id*.

Here, Defendant seeks to compel arbitration based on arbitration agreements purportedly signed by Plaintiffs, which is a factual attack on this Court's subject matter jurisdiction over the Complaint. As a result, in ruling on Defendant's Motion, this Court may consider extrinsic documents and evidence beyond the allegations contained in the Complaint, such as the Declaration of Plaintiff Padilla that is filed herewith. *Cox v. Midland Funding, LLC,* No. 1:14-CV-1576-LMM-JSA, 2015 WL 12862931, at *5 (N.D. Ga. June 11, 2015).

      **b. Under Section 1 of the FAA, workers engaged in foreign or interstate commerce are exempt from the coverage of the FAA and arbitration agreements they sign cannot be enforced by federal courts.**

The FAA was enacted "in response to a perception that courts were unduly hostile to arbitration." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018). "[T]he FAA compels judicial enforcement of a wide range of written arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001).

5

However, expressly exempted from the FAA's coverage are arbitration agreements within the "contracts of employment of seamen, railroad employees, *or any other class of workers engaged in foreign or interstate commerce*." 9 U.S.C. § 1[1] (emphasis added); *Circuit City*, 532 U.S. at 109. Thus, if an arbitration agreement falls within the scope of Section 1, it is exempt from the FAA and cannot be enforced by a federal court.

### c. The U.S. Supreme Court ruled in *Saxton* that workers that load and unload cargo on and off airplanes are engaged in interstate commerce and exempt from the FAA.

In *Southwest Airlines Co. v. Saxon*, 596 U.S. 450 (2022), the issue before the Court was whether ramp supervisors that load and unload baggage and other cargo on and off airplanes that fly interstate are part of "a class of workers engaged in foreign or interstate commerce" and exempt from the FAA under Section 1. *Id*. at 453. The Court answered that question in the affirmative and ruled unanimously[2]

---

[1] 9 U.S.C. § 1 provides, in full, that "'Maritime transactions', as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; "commerce", as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."

[2] Justice Barrett took no part in consideration or decision of the case. *Id*. at 452.

that "any class of workers that loads or unloads cargo on or off airplanes bound for a different State or country is 'engaged in foreign or interstate commerce'" and exempt from the FAA. *Id.* at 459.

In *Saxton*, a ramp supervisor employed by Southwest Airlines filed a FLSA collective action alleging that ramp supervisors were improperly denied overtime compensation. *Id.* at 454. Southwest sought to enforce an arbitration agreement signed by Saxton and moved to dismiss her lawsuit. *Id.* The district court granted Southwest's motion, but the decision was overturned by the Seventh Circuit Court of Appeals. *Id.* at 455. The Supreme Court granted certiorari because the Seventh Circuit's decision conflicted with an earlier decision of the Fifth Circuit Court of Appeals. *Id.*

In deciding whether ramp supervisors are a "class of workers engaged in foreign or interstate commerce," the Court looked to the "ordinary, contemporary, [and] common meaning" of the language of Section 1 of the FAA. *Id.* First, the Court defined the "class of workers" to which Saxons belongs, and after that, determined whether that class is "engaged in foreign or interstate commerce." *Id.*

The Court explained that the use of the word "workers" in Section 1 "directs the interpreter's attention to 'the *performance* of work'". *Id.* at 456 (emphasis in original, citation omitted). The Court concluded that the focus must be on "the actual work that members of the class, as a whole, typically carry out." *Id.* To

7

determine the "actual work" that Saxton and other ramp supervisors carried out, the Court relied on the declaration submitted by Saxton wherein she stated that ramp supervisors "frequently fill in as ramp agents" and personally load and unload cargo on and off airplanes "on a frequent basis." *Id.*

After determining that ramp supervisors frequently load and unload cargo on and off airplanes, the Court looked to whether ramp supervisors are "engaged in foreign or interstate commerce." *Id*. The Court explained that under the FAA, for an employee to be "engaged" in interstate commerce, they must be "occupied, employed, or involved in it." *Id.* at 457 (quotations omitted). Therefore, "any class of workers directly involved in transporting goods across state or international borders falls within § 1's exemption" , and "airline employees who physically load and unload cargo on and off planes traveling in interstate commerce are, as a practical matter, part of the interstate transportation of goods." *Id.* The Court held that "<u>any class of workers that loads or unloads cargo on or off airplanes bound for a different State or country is 'engaged in foreign or interstate commerce'" and exempt from the FAA</u>. *Id*. at 459 (underline added).

### d. Customer Service Leads and Wheelchair Agents load and unload cargo on and off airplanes and therefore are engaged in interstate commerce and exempt from the FAA.

Every workday, Customer Service Leads and Wheelchair Agents load and unload cargo - in the form of passenger baggage - on and off airplanes "bound for

a different State or country." *Id.*; Padilla Decl. ¶¶ 4-6, 8, 12. As a result, they are a class of workers "engaged in interstate commerce" and exempt from the FAA under *Saxton*. 596 U.S. at 459.

The vast majority of passengers that Customer Service Leads and Wheelchair Agents load and unload on and off airplanes bring along a piece of carryon baggage. Padilla Decl. ¶ 7. After wheeling passengers down the jet bridge, Customer Service Leads and Wheelchair Agents often assist the passengers to their seats on the airplane and help them store their baggage under their seat and/or in the overheard baggage compartment. *Id.* ¶ 7. When passengers are immobile, and cannot walk on the plane, multiple Customer Service Leads and Wheelchair Agents load the passenger on the airplane using an aisle chair and then lift the passenger into their seat and stow their baggage on the plane. *Id.* ¶ 10-11. Thus, Customer Service Leads and Wheelchair Agents load baggage onto airplanes on a daily basis. *Id.* ¶¶ 4, 12.

Under the Supreme Court's holding in *Saxton*, passenger baggage is "cargo." *See Saxton*, 596 U.S. at 453 (explaining that Saxton's work "frequently requires her to *load and unload baggage*, airmail, and commercial cargo on and off airplanes that travel across the country.") (emphasis added); at 454 ("Southwest employs 'ramp agents,' who physically load and unload *baggage*, airmail, and freight.") (emphasis added). Thus, the Court's holding is not limited to workers

9

who load and unload commercial cargo but includes employees who load and unload personal "baggage" on and off airplanes as well. Because Customer Service Leads and Wheelchair Agents frequently load and unload baggage/cargo on and off airplanes traveling interstate and international, they are a class of workers "engaged in interstate commerce" and exempt from the FAA. *Id*. at 459.

Furthermore, even though Customer Service Leads and Wheelchair Agents work for Unifi rather than directly for an airline, they are still "engaged in interstate commerce." Defendant "is the largest aviation services provider in North America servicing more than one million flights each year [and] provides a full range of above and below wing services including ground handling, cabin services, passenger handling, security, facility, cargo services, ground support equipment maintenance, and more to most major US-based airlines, airports, and cargo providers." Unifi News, "North America's Largest Provider of Aviation Services Gives Away Car to Employee", August 9, 2022, https://unifiservice.com/north-americas-largest-provider-of-aviation-services-gives-away-car-to-employee/ (last accessed Nov. 7, 2024).

Two years after *Saxton* was decided, the U.S. Supreme Court ruled that "[a] transportation worker need not work in the transportation industry to fall within the exemption from the FAA provided by § 1 of the Act." *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024). Instead, the key issue in

deciding whether an employee is part of a class of workers "engaged in interstate commerce" under FAA § 1 is "what a worker does for an employer, not what the employer does generally." *Id*. at 251 (quotations and brackets omitted). Thus, it is immaterial whether Unifi is considered an employer in the transportation industry because the focus of the FAA § 1 exemption is the nature of the work performed by the plaintiff. Here, as shown above, and in the Declaration of Plaintiff Padilla, Customer Service Leads and Wheelchair Agents load and unload cargo that travels on interstate and foreign flights. As a result, they are a class of workers "engaged in interstate commerce" and exempt from the FAA.

> e. **Even if Customer Service Leads and Wheelchair Agents did not load and unload cargo, they are engaged in interstate commerce and exempt from the FAA because they load and unload passengers.**

Even if Customer Service Leads and Wheelchair Agents did not load and unload cargo on and off airplanes, they are nevertheless covered by Section 1's exemption because they load and unload passengers on and off airplanes. The Third Circuit Court of Appeals explained in a case decided after *Saxton* that "a class of workers comes within the exception [of Section 1] only if "interstate movement of goods" or passengers is 'a central part' of the job description of the class." *Singh v. Uber Techs., Inc.,* 67 F.4th 550, 557 (3rd Cir. 2023) (underline added), citing *Wallace v. Grubhub Holdings, Inc*., 970 F.3d 798, 803 (7th Cir. 2020); *Capriole v. Uber Technologies, Inc.*, 7 F.4th 854, 864 (9th Cir. 2021). Here,

11

the movement of passengers is a "central part" of the job description of Customer Service Leads and Wheelchair Agents because they perform the function every workday. Padilla Decl. ¶¶ 4, 5, 8, 12.

Moreover, Delta Air Lines is a commercial airline carrier that transports passengers to interstate and international destinations. *See* Delta Airlines Route Map, https://www.delta.com/us/en/travel-planning-center/find-your-destination/route-map?srsltid=AfmBOoojqcHLM3xpnYQH8LVUMv2ngP-zORUHAnkOve37wgFS6N1TZoE_ (last accessed Nov. 4, 2024). Indeed, the primary source of Delta's operating revenue is its passengers. *See* Press Release, "Delta Air Lines Announces September Quarter 2024 Financial Results", October 10, 2024, https://www.prnewswire.com/news-releases/delta-air-lines-announces-september-quarter-2024-financial-results-302272284.html?tc=eml_cleartime (last accessed Nov. 4, 2024) (Delta made over $13 billion in revenue from passengers during the three month period ending September 30, 2024, compared to $196 million in revenue from cargo during the same period).

Customer Service Leads and Wheelchair Agents load and unload Delta's paying passengers on and off interstate and international flights every workday. Padilla Decl. ¶¶ 4, 8, 12. Thus, Customer Service Leads and Wheelchair Agents are a class of workers that "plainly do perform activities within the flow of interstate commerce." *Saxton*, 596 U.S. at 463 (quotations and citation omitted).

12

As a result, they are exempt from the FAA.

### IV.     Conclusion

For the foregoing reasons, Customer Service Leads and Wheelchair Agents are a "class of workers engaged in foreign or interstate commerce" under Section 1 of the FAA and the Motion should be denied as a result.

Respectfully submitted, this 7th day of November, 2024.

By:   s/ Michael B. Schoenfeld
      Georgia Bar No. 863727
      STANFORD FAGAN LLC
      2540 Lakewood Avenue SW
      Atlanta, GA 30315
      (404) 622-0521, ext. 2244
      michaels@sfglawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2024, I submitted the foregoing **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION** to the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following counsel of record for Defendant:

>John F. Wymer, III
>THOMPSON HINE LLP
>Two Alliance Center
>3560 Lenox Road, Suite 1600
>Atlanta, GA 30326-4266
>John.Wymer@ThompsonHine.com

By: s/ Michael B. Schoenfeld