IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| RIOVONNI BRYANT, BRANDON MCKINNEY, EMILY PADILLA, and AZAREL TUTMAN, individually and on behalf of all other similarly situated persons,<br><br>        Plaintiffs,<br><br>v.<br><br>UNIFI AVIATION, LLC,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)  Civil Action No. 1:24-cv-04141-AT<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION**

I. **INTRODUCTION**

The individually named Plaintiffs, Riovonni Bryant ("Bryant"), Brandon McKinney ("McKinney"), Emily Padilla ("Padilla"), and Azarel Tutman ("Tutman") (collectively "Plaintiffs") each signed Unifi Aviation, LLC's (the "Company") binding Mutual Arbitration Agreement ("the Agreement"). In doing so, each agreed to resolve all covered claims via binding arbitration. Rather than abiding by their contractual commitment, Plaintiffs, who are Wheelchair Agents and one Customer Service Lead, argue that they fall within a "class of workers engaged in foreign or interstate commerce," and thus fall under the exemption set forth in 9 U.S.C. S. § 1 of the Federal Arbitration Act ("FAA") and are therefore not required to arbitrate pursuant to the contracts they signed.

Plaintiffs, however, are not covered by the FAA's § 1 exemption as set forth in *Southwest Airlines Co. v. Saxon,* 596 U.S. 450, 458 (2022) because they do not play a direct and necessary role in the free flow of goods across borders, nor are their job duties of the nature described by the Court in *Southwest*.

Finally, even if the Court were to hold the FAA to be inapplicable, Georgia law would then apply and still require arbitration of Plaintiffs' claims.

## II.     PLAINTIFFS DO NOT FALL UNDER THE SCOPE OF *SOUTHWEST*

Plaintiffs rely on *Southwest* to argue they are exempt from arbitration under § 1 of the FAA, but in doing so stretch the exemptions coverage far beyond the bounds intended by the Supreme Court. Indeed, the Court held that the exemption applies only to transportation workers who "play a direct and 'necessary role in the free flow of goods' across borders." *Southwest* at 1785 (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001). Stated differently, the Court explained, "transportation workers must be actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce." *Id.*

### A.     PLAINTIFFS ARE NOT ENGAGED IN TRANSPORTATION OF GOODS ACROSS BORDERS OF INTERSTATE COMMERCE

Section 1 of the FAA exempts from FAA's coverage "contracts for the employment of seaman, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C.S. § 1. The any-other-class language is commonly referred to as FAA's "residual exemption." *Grice v. United States Dist. Court*, 974 F.3d 950 (9th Cir. 2020). Despite the worker's request to do so, the *Southwest* Court expressly declined to expand § 1's residual exemption to every employee working in the transportation industry. *Southwest* at 1790-91. The Court noted that expanding the definition of what constitutes a "class of employees" to include all airline employees would exceed the exemption's intent and would "potentially include[s] everyone

from cargo loaders to shift schedulers to those who design" the airline's website. *Id*. Here, the Company is not an airline, and none of its workers are employed by an airline.

Like the plaintiff in *Southwest,* Plaintiffs here attempt to stretch the residual clause far beyond the scope of employees covered by the FAA's exemption. As an initial matter, Plaintiffs incorrectly claim that the *Southwest* Court held that passenger baggage "is cargo." (*See* Pl' Memo. in Opposition at p. 9). The Court explained, however, that the plaintiff—a ramp agent working on an airport tarmac—loaded and unloaded "baggage, *airmail, and commercial cargo*." *See Southwest* at 1787 (emphasis added). Plaintiffs here do not claim to perform the duties the plaintiff in *Southwest* did. No, Plaintiffs assert the "cargo" or "goods" they load and unload are human beings and their personal belongings. Wheelchair Agents do assist **some** wheelchair passengers with their personal belongings, but do so only when a passenger is incapable of physically carrying their own personal item. Wheelchair Agents do not load or unload airmail, commercial cargo, golf clubs, skis, or any other "goods" in interstate commerce. The only loading and unloading takes place with human passengers and their personal items.

The Company's Customer Service Leads are even less connected to interstate commerce than its Wheelchair Agents. Customer Service Leads primarily attend to the customer service needs of passengers within the airport terminal. They provide wheelchair assistance only when circumstances require it and such assistance includes "setting up wheelchairs at the gate." *See* Pl.' Memo. in Opposition, Attachment A at ¶ 6 The Leads never load or unload airmail or commercial cargo from an aircraft. The functions performed by Wheelchair Agents and Customer Service Leads are wholly different than those provided by the ramp supervisor working on an airport tarmac in *Southwest*.

Because the *Southwest* Court expressly declined to expand the scope of the FAA's residual exemption beyond those employees actively engaged in transportation of goods across borders, and because the Company's Wheelchair Agents and Customer Service Leads are not directly and actively engaged in such activity merely by assisting passengers with their personal belongings on and off aircraft, they are not exempt under § 1 of the FAA. As such, Plaintiffs should be compelled to arbitrate.

### B. PLAINTIFFS ARE NOT TRANSPORTING PASSENGERS AS "CARGO" OR "GOODS"

Plaintiffs rely on non-binding authority to argue that transporting human passengers is sufficient to qualify for the § 1 residual exemption. That argument fails for multiple reasons.

First, in two of the three cases cited by Plaintiffs—*Singh v. Uber Techs, Inc.*, 67 F. 4th 550, 559 (3rd Cir. 2023) and *Capriole v. Uber Technologies, Inc.*, 7 F. 4th 854 (9th Cir. 2021)—the workers at issue were automobile drivers tasked with transporting passengers from one physical destination to another. Those cases did not involve a worker whose job it was to assist the passenger in walking to and from the vehicle, with no additional interaction with the passenger. Thus, the job duties performed by the drivers in those cases are not analogous to the job duties performed by Wheelchair Agents or Customer Service leads.

Regardless, in rejecting the Uber drivers' argument that they are subject to the residual exemption, the court in *Singh* focused on the fact that crossing state lines was "incidental" to the drivers' duties, and that the fundamental character of the job is not so connected to interstate commerce to qualify for the residual exemption. *Singh* at 553, 561. Likewise, there is no scenario in which a Wheelchair Agent or Customer Service Lead transports airline passengers to their final destination, and the duties of Wheelchair Agents and Customer Service Leads in assisting passengers with personal items are merely incidental to their primary duties. As noted by Plaintiff

Padilla, "The primary job of a Unifi Wheelchair Agent is transporting passengers through the airport to their gate and onto and off airplanes operated by Delta Airlines." *See* Pl.' Memo. in Opposition, Attachment A at ¶ 5. The primary duties of a Customer Service Lead are even farther removed and include scheduling along with "setting up wheelchairs at the gate." (Id. at Paragraphs 6). Those duties are merely incidental to participation in interstate commerce and do not qualify for the residual exemption.

Second, *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798 (7th Cir. 2020) does not involve the transportation of passengers at all. Rather, it involves the transportation of food through an online food-ordering delivery service. *Id*. at 799. It contains no analysis whether people equate "cargo" or "goods" under the residual exemption. Moreover, the court held that the drivers do not meet the exemption given their lack of connection to actual physical interstate transport. *Id*. at 802-803.

### III. EVEN IF THE FAA DOES NOT APPLY, GEORGIA LAW COMPELS ARBITRATION OF PLAINTIFFS' CLAIMS.

The Company's Arbitration Agreement states that "if the FAA is held inapplicable," Georgia state law applies. Arbitration is required regardless of the FAA's exemption. Section 10 of the Agreement, entitled "Governing Law," specifically provides:

> The agreement to arbitrate claims shall be governed in accordance with the Federal Arbitration Act ("FAA"). If for any reason the FAA is held inapplicable to a question concerning this agreement, then the State of Georgia's law shall apply.

Agreement at § 10. Under Georgia law,

> (a) A party aggrieved by the failure of another to arbitrate may apply for an order compelling arbitration. If the court determines there is no substantial issue concerning the validity of the agreement to submit to arbitration or compliance therewith and the claim sought to be arbitrated is not barred by limitation of time, the court shall order the parties to arbitrate. If a

> substantial issue is raised or the claim is barred by limitation of time[1], the court shall summarily hear and determine that issue and, accordingly, grant or deny the application for an order to arbitrate. If an issue claimed to be arbitrable is involved in an action pending in a court having jurisdiction to hear a motion to compel arbitration, the application shall be made by motion in that action. If the application is granted, the order shall operate to stay a pending or subsequent action, or so much of it as is referable to arbitration.

O.C.G.A § 9-9-6(a).

As explained in the initial Motion, all four Plaintiffs, who are employed in Georgia, entered into a valid agreement with the Georgia-headquartered Company in which they agreed that all covered claims arising out of their employment would be resolved through binding arbitration. *Dawson v. Uber Techs. Inc.,* 2021 U.S. Dist. Lexis 88993 (N.D. Cal. May 7, 2021) (granting employer's motion to compel employee's arbitration based on Georgia law when dispute existed over application of FAA's residual exemption); *Web IV, LLC v. Samples Constr., LLC*, 349 Ga. App. 607, 824 S.E.2d 107 (2019) ("The Georgia Arbitration Code . . . like its federal counterpart reflects a clear public policy in favor of arbitration." (quoting *Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 685 S.E.2d 304 (2009)).

Plaintiffs do not argue their claims are not "covered" claims. Of course, they are. And the language of the Agreement makes clear that Georgia law applies if the FAA does not. Per the Agreement, arbitration is required under Georgia law if the Court holds the FAA inapplicable.

## IV. PLAINTIFFS HAVE WAIVED THEIR RIGHT TO PURSUE COLLECTIVE ACTION.[2]

To the extent the Court relieves Plaintiffs of their promise to arbitrate, Plaintiffs have waived their right to pursue a collective action. Specifically, Section 6 of the Agreement, entitled

---

[1] The Agreement provides for the same statute of limitations Plaintiffs would have to file suit in court, so their ability to arbitrate is in no way barred "by limitation of time." See Agreement at § 4.

[2] Unifi notes that it consents to Plaintiffs filing a sur-reply should they choose to file one in order to address additional arguments not anticipated by Unifi's original Motion to Compel.

"Waiver of Jury and Bench Trial; Waiver of Class Action and Representative Action Claims" provides:

> As to any Covered Claim, each party waives to the maximum extent permitted by law the right to jury trial and to bench trial, and the right to bring, maintain, or participate in any class, collective, or representative proceeding, whether in arbitration or otherwise. Further, all Covered Claims must be brought in the individual capacity of the party asserting the claim and cannot be maintained on a class, collective, or representative basis, to the full extent permitted by applicable law. The arbitrator does not have the authority to consider, certify, or hear an arbitration as a class action, collective action, or any other type of representative action. Either party may seek interim, temporary injunctive, or similar relief from a court as permitted by applicable law.

Agreement § 6. The Eleventh Circuit has held such waivers are valid in the context of claims asserted under the Fair Labor Standards Act ("FLSA"). In *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326 (11th Cir. 2014), this circuit held that nothing in the text of the FLSA "set forth a non-waivable right to a collective action." *Id*. at 1335 (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991) at 1655, and *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228 (2013)).

Plaintiffs waived their right to pursue or participate in a collective action related to any Covered Claim as set forth in the Agreement. Plaintiffs' wage-and-hour claims are based on the FLSA. Because Plaintiffs voluntarily waived their right to pursue or participate in a collective or class action, they should be required to litigate their claims separately.

V.   **CONCLUSION**

Plaintiffs and the Company mutually agreed to arbitrate disputes under the FAA or Georgia law. Respectfully, the Company requests that the Court honor that contract and compel arbitration.

Respectfully submitted,

THOMPSON HINE LLP

*/s/ John F. Wymer, III*
John F. Wymer, III
Georgia Bar No. 779418
John.Wymer@ThompsonHine.com
Two Alliance Center
3560 Lenox Road, Suite 1600
Atlanta, GA 30326-4266
Tel.: 404.407-3669
Fax: 404.541.2905


*/s/ Michael J. Myers*
Michael J. Myers
*Pro Hac Vice Pending*
(OH Bar No. 0096367)
THOMPSON HINE LLP
312 Walnut Street, Suite 2000
Cincinnati, Ohio  45202
Telephone: (513) 352-6721
Facsimile: (513) 241-477
Michael.Myers@ThompsonHine.com


*Attorneys for Defendant, Unifi Aviation, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of November 2024, I electronically caused the foregoing document to be filed with the Clerk of Court using CM/ECF. I also certify that the foregoing documents is being served this day on all counsel of record in the manner specified via transmission of Notices of Electronic Filing generated by CM/ECF.

Michael B. Shoenfeld, Esq.
STNAFORD FAGAN LLC
2540 Lakewood Avenue SW
Atlanta, GA 30315
(404) 662-0521, ext. 2244
Email: michaels@sfglawyers.com

*Counsel for Plaintiff*

/s/ *John F. Wymer, III*
John F. Wymer, III
Georgia Bar No. 779418